Good morning. We have four argued cases today. The first of these is number 12-1297, N. Ray Teles AG. Mr. Kaminsky. Yes, Your Honor. Okay, you may begin. Thank you. May it please the court, we're here because of legal errors that we feel were committed in the PTO's claim reconstruction below concerning Claim 35 of the 453 patent. In interpreting Claim 35, the Patent Office applied its broadest reasonable interpretation standard. You're not going to address the 145 are you now? No, on the 145 issue, Your Honor, we're going to rely just on the briefs and that our basic argument is that the expressed language of 306 was that it should have been to the district court and we're relying on the arguments in the brief, Your Honor. We feel that it's more important to talk about the alleged claim construction. So, both sides do acknowledge that there's different standards being applied to the same claim construction for Claim 35, but we believe that the BRI standard contradicts this court's precedence as well as Supreme Court's precedence in how it was applied. And specifically, we feel that the BRI standard contradicts the Phillips decision. The Phillips decision specifically said, quote, how a person of ordinary skill in the art understands a objective baseline to begin the claim interpretation and that's based on the specification. And what Phillips requires is that claim interpretation must begin by focusing on what this baseline is of the claim terms of the specification. And the first objective is to understand the claim's invention before then applying it. And the BRI does not consider this baseline because what BRI says is that if there's no expressed limitation in the claim, then we're going to basically ignore it. Also, BRI contradicts the Mayo decision as we interpret it. The Mayo decision... It has to do with claim construction. Well, claim construction was in Mayo because Mayo, they needed to decide what the claims were before then going on to patent eligibility and patent validity. So, Mayo talks about inventive concepts and we believe that inventive concepts and baseline... Where does it tie inventive concepts into claim construction? Well, inventive concepts to us is the same as the baseline. Where does the opinion tie inventive concept into claim construction? Well, what Mayo does is they say, okay, let's take a look at this claim and then let's take out the natural law part of it, the natural phenomenon, and let's see what's left. And Mayo uses the term inventive concepts in three different places. And based on our interpretation... It doesn't tie the two together. To our interpretation, it does go together, Your Honor. But there's no language that says... There's no language that says you must use inventive concepts as part of the claim construction, but that's our interpretation of it. Certainly, Phillips does talk about understanding basically the forest before looking at the individual trees, and that's what we contend to have not been the error. And we believe that the error was that the PTO did not fully consider the specification in its that there was admissions made and explanations made by the patent owner during the reexamination proceedings that were ignored, and also that there was declaration evidence that would have helped to determine this baseline, what one of our narrow skill in the art would have thought, which were all ignored. What word is it that you think they got wrong in Claim 35? Well, there were actually three, Your Honor. And each one of these claim terms, we believe, were not fully considered. One of them is control signal. And control signal appears in not only Claim 34, the independent claim, but also Claim 35. And there's aspects of this control signal that are unique to this invention, and that was not ignored. Specifically, the specification teaches that this control signal is automatic, that it automatically sends a changeover signal, and that's also explicit in Claim 35. Control signal was not... So basically, the control signal triggers the switch, and the claim says, automatically when demands on quality of the data transfer are understepped or exceeded. Yes, Your Honor. And so I guess I don't understand what's wrong with the Board's decision, because they too seem to have found that the control signal does this automatically only when there is at least one of the kinds of problems that you articulate, namely where either you exceed a bandwidth or there's too much of a time delay or something. And certainly the plain meaning of those criteria would fall within the claim. Demands on the quality of data transfer, those are each demands on the quality of data transfer, and the specification reaffirms that. So what's wrong with the Board's decision? Several things, Your Honor. First, none of the three prior I referenced talk about monitoring an individual telephone call. And that, we think, is... What does that have to do with control signal? Focus on just the element that we're discussing. Okay. Column 9, lines 36 to 51 of the 902 patent talk about the control signal and its structure and its function. And in that... Wait, that's the 902? Aren't we on the 453 patent? 453. Okay, so what's column and line? 9, column 9. Starting in lines, I guess, 36. Yeah, you cited this in your brief, but I don't see how it helps you because it says and or. So it actually, it doesn't say that it has to do it automatically only when multiple criteria are assessed and evaluated. But it says and or, which seems to me to quite clearly say if any of these criteria are evaluated and determined to be problematic, then it would automatically do it. And we agree, Your Honor. Yes. And we agree. So what we're saying is that this part of the specification talks about monitoring and then automatic re-releasing. And none of the prior references talk about monitoring a specific call. They monitor the system. They send a ping between network computer and network computer, but they don't monitor an individual call. An individual call is not just a network... Time out. I'm really confused. You said, you started your argument by saying there are three terms which the board erred on in claim construction. Yes, Your Honor. So it seems to me that you just agreed with the board's claim construction of control signal, even though what you started with was a statement that you didn't agree with it. So I'm not following your argument. We don't agree with the board's construction because this automatic releasing shows that the signal is proactive, that maybe if I could give a real-world example, Your Honor, the claimed invention does not wait until there's an actual loss of quality in the telephone call, but when there is a threat or a potential threat of there being a loss of quality or some problem, then it automatically releases it, and that comes from the monitoring. None of that was discussed in the board's... The claim says automatically when demands on the quality of the data are understepped or exceeded. It doesn't say when they might be threatened to be understepped or exceeded. It's a demands on quality of data are, affirmatively are, understepped or exceeded. That's what the claim says. The board seemed to be quite faithful to that. I really am not following your argument at all. Okay. Again, maybe if I could just step back and to say that what we're doing is we're saying that the entire specification was not considered, that there were qualities of this control signal that one of ordinary skill in the art would have understood and what happened was that under BRI, just the literal meaning of the claims were, the literal language were considered, but not really the forest, just the trees, and for that reason... I don't understand what you're saying now either. I mean, the prior art talked about concerns with delay and switching over where there are delay problems, and isn't that one of the qualities that's within this description in the specification? That is one of the qualities, but that's not the only quality, Your Honor, and what we think is that this monitor... Why did you say it has to take account of more qualities than delay? The same language, Your Honor, talks about, in a general way, certain other problems, but also claims 14 and 32 talk about noise and talk about other things, and that would have all been part and parcel with what we're talking about. 14, by claim differentiation, talks about time delay or noise proportion, and also claim 32 says the same thing, so it's more than just time delay, Your Honor. But of course it is. That's why the claim is broadly construed to trigger the switch, the control signal triggers the switch when any of these various problems occur, any of them, and you seem to agree with that a minute ago, because I kept focusing on the or language in your own specification, which indicates that any of these individual criteria could give rise to the control signal then automatically doing this. So I don't understand how you're pointing to these other claims in any manner. It's anything but supportive of the Board's construction, quite frankly. I just don't follow. Well, if we take a look at the prior art that was applied here, Your Honor, White talks about pre-selection. There is no signal for changing over of an existing call, and Jonas also does not disclose changing over. It talks about a second telephone call being implemented, I thought Jonas talked specifically about switching over. There are, to us, two interpretations of Jonas. Jonas either has a second call that it sets up, or it stops the first call, disconnects it, and then has a second protocol, handshake protocol. But it does not automatically switch over without interruption, and that's what we think the claimed invention is. That the claimed invention talks about real-time changeover. Didn't the Board conclude that it does switch over without interruption? It does not switch over. No, no, the Board. The Board. That's what our interpretation of the Board's decision was. Yes, Your Honor. Say that again. What's your interpretation? Our interpretation is that the Board ignored the feature of the claimed invention. What did the Board conclude about Jonas? That it just, that there was a changeover. And without terminating the call, right? And that's where we say the error was, because Jonas does talk about either setting up a second call independent of the first one, so you have two calls at the same time, or a second, or disconnecting the first and starting the second. It's unclear. The algorithm's figure two, I think, of Jonas is really unclear. Figure two. Mr. Penisky, do you want to save the rest of your time? I did reserve four minutes, I guess. Yeah, you're into your rebuttal time. Okay, thank you, Your Honor. Yes, good morning. May it please the Court. I just want to address a few things preliminarily. First of all, the broadest reasonable interpretation is appropriate. This Court has said over and over in... Yeah, it would be hard for us to dramatically change that, right? Right, and even post, since Marine Polymer and a recent decision in Leo Pharmaceutical, this Court has again reiterated that in a reexamination, the broadest reasonable interpretation is the appropriate standard. Mayo is not a claim construction case. It had to do with eligibility, and the discussion of inventing concept there had nothing to do with claim construction. It was really about distinguishing an eligible subject matter from an algorithm or something of that nature. And thirdly, I just want to say that they talk about the... The other thing I wanted to mention is that they had the opportunity to amend their claims, so to the extent that they were referring to Marine Polymer, et cetera, they had the opportunity to amend their claims, so there really is no explanation for... There's no reason why we should start trying to read into the reexamination prosecution history. This is an ongoing proceeding, and it would be inappropriate to do that. Now, to get to the merits, let me just say that they tell us continually is shifting their arguments, and before the Board, the arguments with respect to Claim 35, the only claim at issue, as they indicate in their blue brief at 34, Claim 35 is the sole claim that's under appeal that they've argued. In their appeal brief at A1104 and A1105, it's the only arguments they made with respect to that claim, and those arguments pertain simply to the Board's construction of the means plus function term and the demands on quality of data transfer, and the only argument they made was whether or not that should be limited to bandwidth or whether that can extend... Bandwidth plus delay. Or delay. And they said Jonas only discloses delay, and this claim requires both, right? That's what they... Well, I think that what they were trying to argue, although it was a little bit unclear from the read, but it seemed to me that they were trying to argue that it was limited to bandwidth, and so they're distinguishing from Jonas because Jonas is talking more about delay, but frankly I'm not entirely sure what they're arguing. So a lot of what they're arguing now and going on about control signal and trying to read limitations from the specification into the term control signal, none of that was raised before the Board. I think it's pretty clear from the Board's opinion that they did exactly what they were supposed to do with that term. Claim 35 has a means plus function limitation to produce the control signal for transferring to a line switching or packet switching transfer, and they construed that as they should. That is the function, and they found that change over device 711 as discussed at column 9 in the patent is the appropriate structure, and so there's no error in their construction. And then I just want to add that this column 9 that they're trying to rely on to read in all these additional algorithm limitations that doesn't support those limitations, when you look it's a very brief section at column 9, really essentially reiterates the function that's in the claim, and then states that change over control device 711 is the structure that performs that function. So all of these additional sort of limitations they're trying to read are not in the specification. If you have additional questions, I'd be happy to answer them. If you have questions about the jurisdiction, I'd be happy to address those. I do think that the district court here was correct on that, and we also, as we provided to you in a letter on power integrations, the amicus in this case, the court there also found that jurisdiction was lacking for 145 action. The statutory language is very clear between the amendments to 134, 141, and 145. In the 1999 amendments, I think Congress made it very clear that patent owners lack, do not have, they cannot. I thought you were ahead, counsel. Okay. How many, I'm sorry, go ahead. Just out of curiosity, do you know how many patent owners, if any, have maintained a suit passed a motion to dismiss in the district courts since 99? How many, I'm sorry, how many? How many patent owners, if any, have maintained a suit passed a motion to dismiss since 99, since the changes? So you mean relying on the old version? Under the new version, how many? Oh. Have there been any that have made it passed a motion to dismiss? The new version. The new version. The new version is 2011, right, which has raised. The old version, yeah, yeah. So under the new, under the AIA. Yeah, yeah. There's absolutely no suggestion whatsoever in the statute that there could be a 145 action by a patent owner. And as far as I know, that during this sort of window of time. Right. There were, I think, three suits, one of which is now back at the PTO for other reasons. There's this one here, and then power integration has another one, which is currently pending before your court. The notice of appeal was filed relatively recently. And power integration is the only other pending case that involves this issue. As far as we know, yes. I tried to find anything that made it passed a motion to dismiss. I couldn't find anything. Other than that. No, we're not aware of any others. Okay. Thank you, Ms. Nelson. Mr. Kline, you have about ten minutes. Yes, please allow me just to reiterate just for one minute what our thoughts are here. Our thoughts are that the broadest reasonable interpretation standard does not, did not fully consider the invention. And therefore, the viewpoint of the board was incorrect when it considered the claims. It didn't fully consider the specification and the features. It did not accept some of the admissions of the patent owner during the reexamination, and did not fully consider the declaration evidence as to establish the Phillips baseline. And that's all I have. Okay. Thank you, Mr. Kaminsky. Thank both counsel and cases submitted.